**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHAYA RACHEL PRZEWOZMAN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE ISLAMIC REPUBLIC OF IRAN, *et al.*, <br><br> *Defendants*. | Civil Action No. 19-2601 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

On May 5, 2019, terrorist groups launched hundreds of rockets and mortars from the Gaza Strip into various locations in Israel.  Dkt. 23-1 at 41.  Tragically, one of the projectiles killed Pinches Menachem Przewozman, a United States citizen living in Ashdod, a city on Israel's southern coast.  Dkt. 23-3.  Przewozman's family and estate now bring this lawsuit.  Dkt. 6 (Am. Compl.).  Plaintiffs, eleven in all, allege that Hamas and the Palestinian Islamic Jihad ("PIJ") carried out the attack that killed Przewozman.  *Id.* at 9–10 (Am. Compl. ¶¶ 33–36).  They further contend that Defendants, the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS"), and the Islamic Revolutionary Guard Corps ("IRGC"), have for years provided financial and other assistance to Hamas and the PIJ, and that this support aided the May 5 strike.  *Id.* at 5–10 (Am. Compl. ¶¶ 20–36).[1]

---

[1] Although the Court does not make any findings of fact at this time, the Court notes that the evidence Plaintiffs have submitted is concerned almost exclusively with the relationship between Hamas and Iran and says very little about what support Iran may or may not provide to the PIJ. *See* Dkt. 23-1; Dkt. 23-2; Dkt. 23-3.  If Plaintiffs renew their motion for entry of a default judgment at a later date, they are encouraged to address this deficiency.

Plaintiffs seek compensatory and punitive damages from Defendants, relying on the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a), to establish subject-matter jurisdiction.  *Id.* at 1–2 (Am. Compl. ¶ 1).  The seven of Plaintiffs (inclusive of Przewozman's estate) who are United States citizens also rely on another FSIA provision, § 1605A(c), for a federal cause of action, alleging that Defendants provided "material support" to Hamas and the PIJ, which in turn engaged in the "extrajudicial killing" of Przewozman.  *Id.* at 2, 5 (Am. Compl. ¶¶ 2, 17); Dkt. 23-7 at 1; Dkt. 24-2.  Plaintiffs also assert state common law claims for intentional infliction of emotional distress, loss of consortium, aiding and abetting, and civil conspiracy.  *Id.* at 11–13 (Am. Compl. ¶¶ 40–56).[2]  No Defendant has answered or otherwise appeared in this action.  Plaintiffs, accordingly, requested that the clerk of the court enter default against two Defendants—the Islamic Republic of Iran and MOIS—which the clerk of the court has done.  Dkt. 20; Dkt. 21.  To date, Plaintiffs have not requested the entry of default against the IRGC.  *See* Dkt. 20; Dkt. 21.

Plaintiffs have now moved for a default judgment against all three Defendants and for the appointment of a special master to determine damages.  Dkt. 23 at 1.  As explained below, Plaintiffs are not entitled to a default judgment, at least at this time, because the Court lacks personal jurisdiction over Defendants.  The reason is that Plaintiffs failed to serve them in compliance with the relevant statutory requirements.  The Court will therefore **DENY** Plaintiffs'

---

[2] Although Plaintiffs' motion for default judgment mentions Israeli law, Dkt. 23 at 22–23, in their Amended Complaint they assert common law claims only under District of Columbia law and what they refer to as "U.S. state common law," Dkt. 6 at 11–13 (Am. Compl. ¶¶ 40–56). While expressing no view on the merits of these claims or conclusion about what law should control, the Court notes that it is far from clear that U.S. law, rather than Israeli law, applies. *See Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 372–74 (D.D.C. 2020).  In any event, Plaintiffs must demonstrate their right to relief under the law that does apply in order to obtain a default judgment. *See Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 91–92 (D.D.C. 2018).

motion without prejudice and will provide them with a further opportunity to serve Defendants in the manner required under the FSIA.

## I.  LEGAL STANDARD

Even in a garden-variety case, the entry of a default judgment "is not automatic," *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005), and requires the exercise of the Court's "sound discretion," *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).  Most notably, the Court must first satisfy itself that it has subject-matter jurisdiction over the claims and personal jurisdiction over the defendants. *See Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) ("A default judgment rendered in excess of a court's jurisdiction is void."); *Mwani*, 417 F.3d at 6 (explaining that the Court "should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant").  In addition, the Court can only consider a motion for entry of a default judgment on the merits after the plaintiff requests that the clerk of court enter default based on a party's failure "to plead or otherwise defend."  Fed. R. Civ. P. 55(a); 10A Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 2682 (4th ed. 2022) ("Prior to obtaining a default judgment . . . there must be an entry of default as provided by Rule 55(a).").  In cases brought against a foreign state there are more requirements still.  In particular, the claimant must "establish[] his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).

Today, the Court need address only one of these prerequisites: personal jurisdiction. Under the FSIA, the Court has personal jurisdiction over a foreign state "as to every claim for relief over which the [Court] ha[s] jurisdiction . . . where service has been made under section 1608."  28 U.S.C. § 1330(b).  The key inquiry at this stage is whether Plaintiffs have properly

served Defendants.  *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C. Cir. 1990) (citing 28 U.S.C. § 1330(b)).  To establish personal jurisdiction, an FSIA plaintiff must serve the summons and complaint (and, if applicable, a notice of suit) in accordance with the appropriate provision of the FSIA.  *See id.*; 28 U.S.C § 1608.  As a result, to evaluate whether Plaintiffs have properly effected service, the Court must first categorize each defendant to determine which of the FSIA's service provisions applies—28 U.S.C. § 1608(a) or § 1608(b).  After deciding which provision governs as to each defendant, the Court must assess whether Plaintiffs' attempts to effect service satisfied the requirements of that provision. Answering both questions requires the Court to weigh the evidence Plaintiffs have produced in support of their motion for entry of a default judgment, which, in turn, requires the Court to identify the burden of proof Plaintiffs must satisfy.  *See Mwani*, 417 F.3d at 6 (explaining that a court adjudicating an FSIA case against an absent defendant must "satisfy itself that it has personal jurisdiction").  "In the absence of an evidentiary hearing," plaintiffs may satisfy their burden of demonstrating personal jurisdiction by making a "prima facie showing" based on "their pleadings" and "bolstered by such affidavits and other written materials as they can otherwise obtain."  *Id.* at 7 (internal citation and quotation omitted).  The Court must therefore satisfy itself that Plaintiffs have made a "prima facie showing" that they properly effected service with respect to each defendant.

## II.  ANALYSIS

### A.   Determination of Which FSIA Provision Governs Service of Process

Section 1608 governs service of process under the FSIA and provides separate paths that a plaintiff must follow depending on the nature of the entity being served.  *See* 28 U.S.C. § 1608. If a plaintiff seeks to serve a "foreign state," she must comply with the requirements set out in

§ 1608(a), and, if she seeks to serve an "agency or instrumentality of a foreign state," she must comply with the requirements of § 1608(b).  *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 31 (D.D.C. 2014).  The D.C. Circuit has offered the following guidance for determining which path applies: "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994) (same).  "A nation's armed forces" or its "Ministry of Foreign Affairs," for example, "are clearly . . . governmental," *Roeder*, 333 F.3d at 234 (citing *Transaero*, 30 F.3d at 153), whereas a state-owned commercial airline is clearly commercial, *see, e.g.*, *Seramur v. Saudi Arabian Airlines*, 934 F. Supp. 48, 51 (E.D.N.Y. 1996).

Applying that approach here, the Court concludes that all three Defendants are subject to service under § 1608(a) as "a foreign state or [a] political subdivision" thereof.  28 U.S.C. § 1608(a).  "Iran is, of course, the foreign state itself, and the 'core functions' of [the] IRGC and MOIS are inherently governmental."  *Holladay v. Islamic Republic of Iran*, 406 F. Supp. 3d 55, 59 (D.D.C. 2019); *see also Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 59 (D.D.C. 2007) ("[B]oth MOIS and [IRGC]" must be treated as the foreign state for purposes of § 1608(a)).  The IRGC, as a branch of the Iranian Armed Forces, performs a military function, and the MOIS serves as Iran's primary intelligence agency.  Dkt. 6 at 5 (Am. Compl. ¶¶ 18–19); *Holladay*, 406 F. Supp. 3d at 59.  As a result, they are both "so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state."  *Transaero*, 30 F.3d at 153.

**B.     Service Under § 1608(a)**

Section 1608(a) provides for four methods by which a party may serve a foreign state:

(1)     by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2)     if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3)     if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4)     if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

These methods must be pursued in "descending order of preference," *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015), meaning that a party "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on," *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008); *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012).  Because "Congress meant for section 1608(a) to establish a relative *hierarchy* of service methods," a plaintiff "may not opt to serve a foreign defendant *out of order*, *i.e.*, by pursuing a *less* preferred

method first, in contravention of the express language of the statute." *Azadeh v. Gov't of the Islamic Rep. of Iran*, 318 F. Supp. 3d 90, 100 (D.D.C. 2018) (emphasis in original).  One consequence of this rule is that even an otherwise successful attempt to serve a foreign state is invalid if conducted without following the statutorily prescribed order.  In *Azadeh v. Government of the Islamic Republic of Iran*, for instance, this Court held that a plaintiff who had served a foreign state under § 1608(a)(4), without having previously attempted service under § 1608(a)(3), could not "cure[] the prior personal jurisdiction problem by backtracking and seeking to effect service by mail under [§] 1608(a)(3)" after the fact.  *Id.*  Instead, the Court required her to "re-serve[] [the] [d]efendants under [§] 1608(a)(4)" after having gone back and attempted service under § 1608(a)(3), "because the prior [attempt at § 1608(a)(4) service] was invalid due to her failure to undertake first service by mail under [§] 1608(a)(3)."  *Id.*  It "d[id] not matter that [the plaintiff had] *almost* complied with the service requirements laid out in [§] 1608(a), or that [the defendants] [we]re aware of th[e] lawsuit by virtue of her prior success in providing notice" under § 1608(a)(4), because "with respect to serving a foreign state under [§] 1608(a), a near miss is still a miss."  *Id.*; *see also Estate of Hirshfeld v. Islamic Republic of Iran,* 235 F. Supp. 3d 45, 47–48 (D.D.C. 2017) (refusing to find service effective where the plaintiff successfully served the foreign state under § 1608(a)(4) before attempting service under § 1608(a)(3)).

Judicial insistence on strict compliance with § 1608(a)'s prescribed order-of-service is just one application of the more general principle that, when serving a foreign state, "strict adherence to the terms of [§] 1608(a) is required," *Transaero*, 30 F.3d at 154, and "neither substantial compliance, nor actual notice" suffices, *Barot*, 785 F.3d at 27.  As the Supreme Court recently explained in *Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019), although

"enforcing compliance" with the letter of § 1608(a) may at times seem like an "empty formality," in "cases with sensitive diplomatic implications," such as FSIA suits, "the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction." *Id.* at 1062. And in *Harrison* the Supreme Court demonstrated just how seriously it takes this notion. In that case, plaintiffs seeking to sue Sudan under the FSIA attempted to effect service pursuant to § 1608(a)(3) by addressing a service packet to the foreign minister by name and sending it to Sudan's embassy in the United States. *Id.* at 1053. The Court held that this attempt at service was inadequate, because § 1608(a)(3)'s requirement that a service packet "be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned" was "[m]ost naturally read . . . [to] require[] that a mailing be sent directly to the foreign minister's office *in the minister's home country*," not to that country's embassy in the United States. *Id.* (emphasis added). The Court reached this result notwithstanding its recognition that (1) "§ 1608(a)(3) does not expressly provide where service must be sent," *id.* at 1061, (2) its reading of the statute was "not . . . the only plausible reading of the statutory text," *id.* at 1056, and (3) its strict holding would cause the plaintiffs "understand[able] . . . exasperation," *id.* at 1062.

Mindful of its obligation to apply a similarly stringent standard for service in the instant case, the Court turns to Plaintiffs' efforts to serve Defendants. The first two mechanisms of effecting service—by delivery of the summons and complaint either "in accordance with any special arrangement for service between the plaintiff and the foreign state" under § 1608(a)(1) or "in accordance with an applicable international convention on service of judicial documents" under § 1608(a)(2)—were unavailable to Plaintiffs in this case. *See* Dkt. 12-1 at 1. No "special arrangement" governs service between the United States and Iran, nor is Iran party to an

international convention on service of judicial documents.  *See Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 77–78 (D.D.C. 2017).

Plaintiffs' problems arose when they attempted to serve Defendants under § 1608(a)(3), which requires service by mail "addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  Beginning with the Islamic Republic of Iran, Plaintiffs requested that the clerk of court mail a service packet to:

> The Islamic republic of Iran
> The Ministry of Foreign Affairs
> Imam Khomeini Street
> Imam Khomeini Square
> Tehran, Iran
> 1136914811

Dkt. 9.  The clerk did so, Dkt. 10-1 at 1–2, but the service attempt failed, Dkt. 12-1 at 1.

This service attempt did not strictly adhere to § 1608(a)(3)'s requirements, because Plaintiffs did not direct the clerk to "address[] and dispatch[]" the mailing "to the head of the [Iranian] ministry of foreign affairs."  *See* 28 U.S.C. § 1608(a)(3).  Instead, Plaintiffs had the packet addressed to the ministry of foreign affairs in general.  Dkt. 9; Dkt. 10.  Although this mistake is a technical one, the Court cannot overlook it.  The FSIA's text must be strictly enforced, *Transaero*, 30 F.3d at 154, and that text clearly requires that the packet be addressed to a particular individual—namely, the "head of the ministry of foreign affairs of the foreign state concerned," § 1608(a)(3).

Precedent confirms both this reading of § 1608(a)(3) and its consequences for this case.  That Plaintiffs' failure correctly to address their mailing was fatal to their service attempt follows almost *a fortiori* from *Harrison*, because the requirement that the mailing be addressed to "the head of the ministry of foreign affairs" is far more explicit in § 1608(a)(3)'s text than is the requirement *Harrison* found dispositive—that a packet addressed to the minister be sent to the

minister's office within his or her country.  *See* 139 S. Ct. at 1056.  *Harrison* also repeatedly

explains that "the most natural reading of § 1608(a)(3) is that the service packet *must bear the*

*foreign minister's name* and customary address and that it be sent to *the minister* in a direct and

expeditious way."  *Id.* at 1057 (emphasis added); *see id.* at 1061 ("The service packet must be

mailed directly to the foreign minister at the minister's office in the foreign state.").

Even more directly on point, the D.C. Circuit addressed this very issue in *Barot* and

explained that § 1608(a)(3) requires:

> serving a summons, complaint, and notice of suit, along with any necessary
> translations, that are "dispatched by the clerk of the court," and sent to the "head
> of the ministry of foreign affairs" . . . *whether identified by name or title, and*
> *not to any other official or agency.*

785 F.3d at 30 (emphasis added) (internal citations omitted).  In *Barot*, the court held that service

was ineffective under § 1608(a)(3) where the service materials, although sent to the correct Post

Office Box, were addressed to the "Embassy of Zambia," and not to the "Head of the Ministry of

Foreign Affairs."  *Id.* at 29.  This Court has also repeatedly held that a failure to address service

to the foreign minister renders a service attempt ineffective.  *See, e.g.*, *Law Offs. of Arman*

*Dabiri & Assocs. P.L.L.C. v. Agric. Bank of Sudan*, No. 17-cv-2497, 2019 WL 231753, at *5

(D.D.C. Jan. 16, 2019); *Mohammad Hilmi Nassif & Partners v. Republic of Iraq*, No. 17-cv-

2193, 2020 WL 1444918, at *2–3 (D.D.C. Mar. 25, 2020).

Plaintiffs' attempts to serve the MOIS and the IRGC suffered from the same error as well

as an additional one.  As discussed above, for purposes of § 1608, the MOIS and the IRGC are

treated as a foreign state, *i.e.*, they are considered to be Iran itself, not an "agency or

instrumentality" of Iran.  They must therefore be served in strict compliance with § 1608(a).

*Transaero*, 30 F.3d at 153–54.  Consequently, where, as here, service under the first two

paragraphs of that section fails, a party must serve the MOIS and the IRGC in accordance with

§ 1608(a)(3), which (at the risk of belaboring the point) requires that a service packet "be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." Plaintiffs, however, asked the clerk to send the service packets to the IRGC and the MOIS themselves, directing the clerk to mail the materials to:

> Iranian Ministry of Intelligence & Security
> (a/k/a Verzarat-e Ettela'at Va Amniat-e Keshvar a/k/a VEVAK a/k/a VAJA)
> Second Negarestan Street
> Pasdaran Avenue
> Tehran, Iran
>
> and
>
> The Islamic Revolutionary Guard Corps ("IRGC")
> Armed Forces Headquarters Iran
> Tehran – Zone 7 – Shariati
> Ghoddoosi Square (Ghaar)
> Tehran, Iran

Dkt. 7; Dkt. 8; Dkt. 10. These mailings, like Plaintiffs' mailing to Iran, were refused. Dkt. 13-1 at 1; Dkt. 14-1 at 1. And these mailings, like Plaintiffs' mailing to Iran, did not comply with § 1608(a)(3). The most significant defect with Plaintiffs' approach is that they did not have the service packets addressed to Iran's ministry of foreign affairs at all, addressing them instead to the MOIS and the IRGC. In addition, and as above, they did not direct the packets to the foreign minister specifically. Plaintiffs therefore failed properly to attempt service of the MOIS and the IRGC under § 1608(a)(3).

But Plaintiffs, presumably not realizing their mistakes and assuming that they had made proper albeit unavailing attempts to serve Defendants pursuant to § 1608(a)(3), then proceeded to serve Defendants under § 1608(a)(4). That provision requires service by mail from the clerk of court to the Secretary of State, who must transmit the required material "through diplomatic channels to the foreign state." 28 U.S.C. § 1608(a)(4). The Department of State must then send

"the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted."  *Id.*  Plaintiffs provided the Clerk with the relevant documents and requested service pursuant to § 1608(a)(4) on December 18, 2019.  Dkt. 12; Dkt. 13; Dkt. 14.  The Clerk mailed these materials to the State Department on December 23, 2019.  Dkt. 16.  On May 28, 2020, the State Department notified the Clerk that the documents had been delivered to Iran, the MOIS, and the IRGC.  Dkt. 18.  As the Department explained, "[b]ecause the United States does not maintain diplomatic relations with the Government of Iran," the documents were transmitted to the Embassy of Switzerland in Iran, which then transmitted the materials to the Iranian Ministry of Foreign Affairs on April 6, 2020.  *Id.* at 1.

In light of Plaintiffs' faulty attempts to serve Defendants pursuant to § 1608(a)(3) followed by their (otherwise) proper service pursuant to § 1608(a)(4), the Court confronts the following question: Can it disregard or excuse Plaintiffs' noncompliant attempts at § 1608(a)(3) service and exercise personal jurisdiction over Defendants, because Plaintiffs subsequently and successfully served Defendants under § 1608(a)(4)?  The answer is no.  Because Plaintiffs' attempts to serve Defendants pursuant to § 1608(a)(3) did not strictly adhere to the requirements of that provision, their later service under § 1608(a)(4) was a nullity.

This conclusion finds support in the text of § 1608 and in the caselaw interpreting that provision: failure to follow the carefully delineated rules for serving a foreign state cannot be cured or excused without retracing the steps required under § 1608.  Under the statute, "if service cannot be made within 30 days under paragraph (3)"—*i.e.*, under § 1608(a)(3)—then a party can attempt service under § 1608(a)(4).  28 U.S.C. § 1608(a)(4).  The question, then, is what the phrase "if service cannot be made under paragraph (3)" means.  The words "cannot be made" indicate that a plaintiff must attempt to effect service under § 1608(a)(3), and some impediment

12

must stand in the way of accomplishing service under that provision, before progressing to § 1608(a)(4). After all, without attempting service in a particular manner, a plaintiff cannot know whether service can be made in that manner or not. And the word "cannot" connotes more than inexactitude or negligence; if service *can* be achieved under § 1608(a)(3), that is what the statute requires. Consistent with this language, courts have often held that plaintiffs are obligated to work through the statutory service methods in order, exhausting § 1608(a)(3) before moving to § 1608(a)(4). *E.g.*, *Angellino*, 688 F.3d at 773 ("Section 1608 prescribes four methods of service—'in descending order of preference'—and a plaintiff 'must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on.'" (quoting *Ben-Rafael,* 540 F. Supp. 2d at 52)); *Azadeh*, 318 F. Supp. 3d at 100 (same); *Estate of Hirshfeld*, 235 F. Supp. 3d at 47–48 (same). Thus, an FSIA plaintiff must attempt service under § 1608(a)(3) *in a manner that complies* with the statutory directives and may move on to attempt service under § 1608(a)(4) only if that *compliant effort* to effect service fails.

This reading of the statute accords with the well-established rule that parties must strictly comply with the terms of § 1608(a). *Barot*, 785 F.3d at 27. The D.C. Circuit has explained that mere "substantial compliance" with § 1608(a) is the same, for personal jurisdiction purposes, as not complying with § 1608(a) at all. *See id.*; *see also Azadeh*, 318 F. Supp. 3d at 100 ("[W]ith respect to serving a foreign state under section 1608(a), a near miss is still a miss."). But if a failure completely to comply with one method of service could be obviated merely by moving along to the next option, this strict-adherence rule would lose much of its force. "[A] near miss" would no longer be a miss, as long as a plaintiff pursued his next alternative. *Azadeh*, 318 F. Supp. 3d at 100. As *Harrison* explained, "the rule of law" demands more in the FSIA context.

139 S. Ct. at 1062. Not only that, once one recognizes that imperfect service under one of § 1608(a)'s provisions is no different than no service under that provision at all, it becomes clear that the situation here is the same as that in cases in which plaintiffs have simply skipped over earlier-enumerated service methods in favor of those appearing later in the statute. And as discussed, courts consistently have held that this latter practice deprives them of personal jurisdiction. *See, e.g.*, *Azadeh*, 318 F. Supp. 3d at 100; *Estate of Hirshfeld*, 235 F. Supp. 3d at 47–48; *Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557, 559 (D.D.C. 2017). The same result must obtain here.

Although it might be argued that as a matter of fairness the Court should distinguish between wholly ignoring one of § 1608(a)'s service methods and attempting to adhere to a service method (albeit without careful attention to statutory requirements), doing so would be at odds with the rule of strict compliance and would also create significant practical problems. For one thing, this approach would disincentivize plaintiffs from "adher[ing] to [§ 1608(a)'s] strict requirements," which, for reasons already given, is a significant strike against it. Allowing subsequent service under § 1608(a)(4) to cure a flawed attempt to effect service under § 1608(a)(3) would also drag courts into the messy inquiry of what constitutes a good faith or flawed-but-close-enough attempt at service sufficient to permit a plaintiff to proceed from one method to the next. Presumably, courts would need to develop some test to assess whether a flawed attempt at service was close enough; if any attempt, however minimal, counted for this purpose, the statutory directive would lose all meaning. But setting and enforcing such a limitation would invite a host of other problems. What if, for example, a plaintiff addressed a service packet to the wrong country? Or prepared the packet but forgot to deliver it to the clerk of court to send? Or translated the summons, complaint, and notice of suit into the wrong

14

language?  What result?  Questions of this type would doubtless arise, and courts would have nothing to guide their resolution of them.  *Harrison* rejected exactly this sort of "line-drawing" "in favor of maintaining a clear, administrable rule."  139 S. Ct. at 1061.  This is particularly important in the context of suits against foreign states, where uncertainty and open-ended inquiries raise the risk of significant diplomatic consequences.

Although one might argue that requiring Plaintiffs to go back and attempt service pursuant to § 1608(a)(3) (and potentially § 1608(a)(4)) would constitute a waste of time or a pointless formality, the Court cannot agree.  As an initial matter, that argument is at odds with both *Harrison* and D.C. Circuit precedent.  *See* 139 S. Ct. at 1062; *Barot*, 785 F.3d at 27; *Transaero*, 30 F.3d at 154.  Taking the argument head on, the possibility that strict compliance with § 1608(a) will take more time than noncompliance is both predictable and no justification for noncompliance.  Courts already require plaintiffs who entirely skip one of § 1608(a)'s service methods to go back and try again.  *See, e.g.*, *Azadeh*, 318 F. Supp. 3d at 100; *Estate of Hirshfeld*, 235 F. Supp. 3d at 47–48.  The inefficiency is no greater where, as here, a plaintiff has instead made errors in her attempt to serve a defendant.  Nor is § 1608(a)(3) service merely a formality on the way to inevitable § 1608(a)(4) service, at least not in this case.  Iran not infrequently accepts service that has been properly made under § 1608(a)(3).  *See, e.g.*, *Karcher*, 249 F. Supp. 3d at 559–60; *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 49 (D.D.C. 2012); *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 6 (D.D.C. 2011).  So, if Plaintiffs choose to attempt § 1608(a)(3) service again, they might well succeed.

The Court, accordingly, concludes that Plaintiffs have failed to effect service of any of Defendants in the manner required under § 1608 and that, as a result, the Court lacks personal jurisdiction over Defendants.  *See* 28 U.S.C. § 1330(b).

* * *

Although Plaintiffs have failed properly to effect service, dismissal is unwarranted.  Even if a party "has not complied with the service of process requirements," the Court has discretion to permit the party to give it another go, rather than dismiss the case.  *See Candido v. District of Columbia*, 242 F.R.D. 151, 164 (D.D.C. 2007).  Indeed, the D.C. Circuit has cautioned that "dismissal is *not* appropriate when there exists a reasonable prospect that service can be obtained."  *Barot*, 785 F.3d at 29 (emphasis added) (quoting *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983)).  *Barot* is instructive.  In that case, the D.C. Circuit held that it was an abuse of discretion to dismiss for insufficient service of process when (1) the service attempt "came very close to satisfying the Act's requirements . . . [thus] showing good faith;" (2) "the statute of limitations [had] run on [the plaintiff's] claims;" and (3) "[the defendant] [had] identified no particular prejudice it would suffer if [the plaintiff] were permitted another opportunity to make proper service."  *Id.* at 29.

At least two of the same considerations weigh against dismissal in this case.  Plaintiffs' attempts at service came "very close" to satisfying § 1608(a)(3).  With respect to Iran itself, as in *Barot*, "[t]he defect . . . came down to one line of the address block: it should have said 'Head of the Ministry of Foreign Affairs.'"  *Id.*  Although the mistakes in Plaintiffs' attempts to serve the MOIS and the IRGC were marginally more substantial, they are still a matter of fixing the address.  In all three cases, "[t]here clearly exists a reasonable prospect that service can be obtained."  *Id.* (internal quotation marks and citation omitted).  Nor can the Court identify any prejudice to Defendants that would result from allowing Plaintiffs to perfect service or any benefit that would result from requiring Plaintiffs to re-file their complaint.  It would neither further the interests of fairness nor judicial economy to force Plaintiffs to do so.

16

To be clear, if Plaintiffs wish to attempt to re-serve Defendants, they must do the following: First, they must serve Defendants in strict compliance with § 1608(a)(3).  If that proves successful, nothing more is necessary from a service perspective.  But if this approach does not succeed within 30 days of Plaintiffs' proper attempt, Plaintiffs must then re-serve Defendants in strict compliance with § 1608(a)(4).  *See* 28 U.S.C. § 1608(a)(4).

Before concluding, the Court notes a further problem with all of Plaintiffs' efforts at § 1608(a)(3) service in this case, although it is less clear that this issue, standing alone, would deprive the Court of personal jurisdiction.  Plaintiffs attempted, unsuccessfully as it turns out, to serve all three Defendants pursuant to § 1608(a)(3), or at least that is what they claim in their motion for default judgment.  Dkt. 23 at 14.  But on each of Plaintiffs' affidavits requesting the clerk of court to mail service packets to these Defendants, Plaintiffs indicated that they were seeking service pursuant to 28 U.S.C. § 1608(b)(3)(B), not § 1608(a)(3).  Dkt. 7; Dkt. 8; Dkt. 9.  This is evident because each affidavit states that the undersigned counsel is requesting the clerk to mail a copy "pursuant to the provisions of" one of four sources of legal authority, each with a check box next to it.  Dkt. 7; Dkt. 8; Dkt. 9.  These options are: (1) FRCP 4(f)(2)(C)(ii); (2) 28 U.S.C. § 1608(a)(3); (3) 28 U.S.C. § 1608(b)(3)(B); and (4) 28 U.S.C. § 1608(a)(4).  Dkt. 7; Dkt. 8; Dkt. 9.  On all of the affidavits (one each for Iran, the MOIS, and the IRGC), Plaintiffs' counsel checked the third box, corresponding to § 1608(b)(3)(B).  Dkt. 7; Dkt. 8; Dkt. 9.

Had Plaintiffs' efforts at § 1608(a)(3) service been otherwise consistent with the statutory requirements, the Court would need to resolve the question whether these efforts were nevertheless deficient because Plaintiffs indicated that they were serving Defendants pursuant to the wrong statutory provision.  The question is not an easy one.  On the one hand, courts require "strict adherence to the terms of [§] 1608(a)."  *Transaero*, 30 F.3d at 154.  But, on the other

hand, nothing in § 1608(a)(3) expressly requires that a plaintiff accurately identify under which provision of law it is attempting service.  The Court need not and does not decide the question, however, because the other defects in Plaintiffs' attempts to serve Defendants are sufficient to preclude the exercise of personal jurisdiction.  But should Plaintiffs make another attempt to serve Defendants, they should do so with careful attention to all the relevant details, including by checking the correct box on any affidavits they submit.[3]

## CONCLUSION

To sum up, the Court cannot enter default judgment against Defendants, because it lacks personal jurisdiction over them.  Plaintiffs may, however, make another attempt to serve Defendants in strict compliance with § 1608(a).  As a result, it is hereby **ORDERED** that the motion for default judgment is **DENIED** without prejudice.  It is further **ORDERED** that the clerk's entry of default against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, Dkt. 21, is **VACATED**.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 19, 2022

---

[3] Even if Plaintiffs had properly served Defendants and otherwise met the requirements for relief on their claims, the Court would still have been unable enter a default judgment against the IRGC, because Plaintiffs never requested an entry of default against IRGC.  *Antoine v. U.S. Bank Nat'l Ass'n*, 547 F. Supp. 2d 30, 35 (D.D.C. 2008); Dkt. 20; Dkt. 21.  Should Plaintiffs wish to continue to pursue this action against all Defendants, they will need to request an entry of default against every Defendant at the appropriate time.